**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CHINYERE AADUKA OSUJI and RALPH
FRANCIS CAZENAVE BEY,

      **Plaintiffs,**

        v.

DEPARTAMENTO DE LA FAMILIA,
ORLANDO LÓPEZ BELMONTE, GLENDA
GERENA-RÍOS and CARMEN ANA
GONZÁLEZ-MAGAZ

      **Defendants.**

**CIVIL NO. 20-1545 (RAM)**

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

      Pending before the Court is Plaintiffs Chinyere Adaaku Osuji ("Mrs. Osuji") and Ralph Francis Cazenave Bey's ("Mr. Bey") ("Plaintiffs") *Emergency Motion Informing Noncompliance with Preliminary Injunction Order and Requesting a Temporary Restraining Order or Equivalent Relief* ("*Emergency Motion Informing Noncompliance*"). (Docket No. 115). For reasons set below, motion is **GRANTED** and Defendants Departamento de la Familia ("PRDF" by its English acronym), Orlando López-Belmonte ("López-Belmonte") and Glenda Gerena-Ríos ("Gerena-Ríos") (jointly, "Defendants") are hereby **found in contempt for failing to comply with this Court's September 27, 2021 Opinion and Preliminary Injunction Order at Docket No. 111.**

## I.   PROCEDURAL BACKGROUND

On October 13, 2020, Plaintiffs filed an *Affidavit for Writ of Habeas Corpus and Writ of Mandamus* against the PRDF. (Docket No. 1). On December 21, 2020, they filed a *Supplemental Complaint* ("*Complaint*") adding as defendants López-Belmonte and Gerena-Ríos, the PRDF's former Secretary and the current Administrator of the Administration for Children and Family, respectively. (Docket No. 34).[1]

Plaintiffs are parents to a now two-year-old infant ("MOB") who was removed from their home by the PRDF on March 11, 2020 when he was three months old. (Docket No. 34 ¶ 8). Since then, MOB has remained in the PRDF's custody and Plaintiffs have had limited visits with him. Id. at ¶ 13. Plaintiffs' *Complaint* raises claims under the Fourteenth Amendment's due process and the equal protection clauses, rights enforceable under 42 U.S.C. § 1983, and Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. Id. at 9-11.

On April 3, 2021, Plaintiffs, who are monolingual English speakers, filed a *Motion for Preliminary Injunction*. (Docket Nos. 44 and 46). They asserted they were complying with the PRDF's

---

[1] Mr. López-Belmonte was the PRDF Secretary when the complaint was initially filed. In his official capacity he was automatically substituted by his successor, Carmen Ana González-Magaz ("González-Magaz"), pursuant to Fed. R. Civ. P. 25(d). Summons were subsequently issued and returned executed for Mrs. González-Magaz. (Docket Nos. 38-1; 41 at 1-2).

reunification requirements, but the PRDF's lack of English-
language resources caused them to have to "jump through more hoops"
than Spanish-speaking parents. (Docket No. 44 at 13). They also
argued that since MOB has been assigned to foster homes without
English-speaking staff, he has not learned English, which will
hinder communication between him and Plaintiffs when they are
reunited. Id. Thus, they requested the Court order Defendants to:
(a) cease from continuing with a policy of providing unequal
services to non-Spanish-speaking United States citizens in Puerto
Rico as Spanish-speaking ones; and (b) return MOB's physical
custody to Plaintiffs while they fulfill the PRDF's service plan.
Id. at 17. López-Belmonte, Gerena-Ríos and the PRDF filed motions
to dismiss, but these were denied. (Docket Nos. 51-52; 64).

In July 2021, the Court held a four-day Preliminary Injunction
Hearing, after which the parties filed post-hearing briefs.
(Docket Nos. 81-84, 102-104). On September 27, the Court issued
its Opinion and Preliminary Injunction Order ("Preliminary
Injunction Order"). (Docket No. 111 at 1). The Court found
Plaintiffs showed a likelihood of success on the merits as to the
alleged Fourteenth Amendment violations. Id. at 26. But the Court
denied the request for physical custody, finding it would not
interfere with the Family Court's decision to remove MOB from
Plaintiffs' custody at that time. Id. Defendants were ordered to:
(1) immediately assign a fully bilingual social worker to MOB's

case; (2) ensure all contractors rendering services to Plaintiffs and MOB under the state court approved service plan can deliver the services in English; (3) generate all documents to be given to Plaintiffs by the PRDF or its contractors in English; and (4) place MOB in an English-speaking foster home or with a qualified family member within twenty-one days of the Preliminary Injunction Order. Id. at 1-2; 52.

On November 1, Plaintiffs filed an *Emergency Motion Informing Noncompliance.* (Docket No. 115). They allege Defendants failed to assign Plaintiffs a fully bilingual social worker and did not attempt to place MOB in an English-speaking foster home. Id. at 2. They also aver Defendants informed them of plans to move MOB to an English-speaking home in San Juan *after* the deadline to re-home him had elapsed. Id. at 3-4. Thus, they request a Temporary Restraining Order ("TRO") preventing the move and an order for Defendants to appear and show cause as to their noncompliance with the Court's Preliminary Injunction Order. Id. at 4, 8.

On November 3, the Court heard the parties' arguments regarding the TRO and the PRDF was ordered to show cause as to why it should not be held in contempt. (Docket No. 119). The Court issued a TRO ordering Defendants to keep MOB at the foster home in Aguada, where he is presently located. (Docket No. 120).

On November 11, the PRDF filed a *Motion in Compliance with Order and to Show Cause,* stating that the PRDF Aguadilla office

did not have a fully bilingual case worker. (Docket No. 125 at 2-3). In compliance with the Court's orders, on October 19 the PRDF identified and assigned a bilingual social worker based in Ponce, Jackeline Rodríguez Mandry, to MOB's case. Id. at 3. It also posits it provided all PRDF documents and communications with Plaintiffs in English and that Mrs. Osuji completed her psychological evaluations in English. Id. at 4. Lastly, it avers the Aguadilla PRDF office inquired with three possible group homes in San Sebastián, but they were not viable options. Id. at 3.

During a hearing on November 12, the Court extended the TRO until the Court ruled on the contempt issue and set a contempt hearing for December 14, after a pending state hearing set for December 6. (Docket No. 126). Likewise, the Court held that Plaintiffs would remain under the supervision of Mr. Wilfredo Lorenzo ("Mr. Lorenzo"), their Aguadilla social worker, for the time being. (Docket No. 131 at 4).

On December 9, Plaintiffs filed an informative motion regarding several issues with the December 6 hearing. (Docket No. 135). They posit the hearing was reset for January 25, 2022 because of translation issues. Id. at 3-4. They also notified that the PRDF's Spanish-language *Informe Social Seguimiento Plan De Servicios En Beneficio Del Menor M.O.B.* ("Social Report for the status on service plan for the benefit of MOB" in English or the "Report") proffered by the PRDF for the December 6 state court

hearing stated that reunification between Plaintiffs and MOB was
not possible given that Mrs. Osuji must undergo additional therapy
sessions. Id. Whereas at prior hearings before this Court on
November 3 and 12, Defendants had implied that reunification was
possible so long as the psychologist's report was positive. (Docket
Nos. 135 at 2, 4; 136-1). Lastly, Plaintiffs asserted this refusal
to recommend custody equaled actionable retaliation under Section
1983 and requested to file a supplemental complaint. Id. at 6-9.

On December 11, the PRDF filed an urgent motion requesting
continuance of the December 14 hearing because their main witness,
Mr. Lorenzo, was hospitalized in early December and was unable to
work until December 22. (Docket No. 138 at 2-4). It asserted that
Mr. Lorenzo's condition, coupled with other issues, is what caused
the re-scheduling of the December 6 hearing. Id. at 2. The Court
denied the motion for untimeliness and because the cryptic medical
excuse proffered for Mr. Lorenzo did not justify his
unavailability. (Docket No. 139).

On December 14, the Court heard the parties regarding a
finding of contempt and Defendants were found in contempt. (Docket
No. 141). The Court ordered that MOB be placed in a fully bilingual
foster home in the Aguadilla Judicial Region on or before December
31, 2021 and the Preliminary Injunction Order was modified to
specify that MOB cannot be moved from that region. Id. The Court
granted Plaintiffs' request to file a Supplemental Complaint and

provided them with a 14-day term to brief the Court as to why they should regain custody of MOB. <u>Id.</u> Defendants were given the same term to respond. <u>Id.</u>

## II.  FINDINGS OF FACT

Having analyzed the relevant motions and testimony, the Court makes the following findings of fact:[2]

<u>September 27, 2021 Opinion and Preliminary Injunction Order</u>

1.  The Court issued an Opinion and Preliminary Injunction Order ("Preliminary Injunction Order") on September 27 denying in part and granting in part Plaintiffs' *Motion for Preliminary Injunction* filed at Docket No. 44. (Docket No. 111).

2.  The Court found that Plaintiffs showed a likelihood of success on the merits as to allegations of violations to the due process and the equal protection clauses of the Fourteenth Amendment. <u>Id.</u> at 27-46.

3.  More specifically, it held Plaintiffs were entitled to relief due to the following actions by Defendants:

    a. Defendants inexplicably **did not assign a fully bilingual social worker to Plaintiffs' case** despite the record reflecting that the PRDF has them in its staff;

---

[2] References to a Finding of Fact shall be cited as follows: (Fact ¶__).

b. Defendants did not provide Plaintiffs with an accurate English translation of a summary of Act 246-2011 which is ordinarily provided to parents at the time of the child's removal;

c. Defendants **did not hold a hearing within seventy-two (72) hours** following MOB's removal, as required by law, due to a lack of translation services;

d. Defendants postponed the removal hearing on multiple occasions for lack of translation services and, at the removal hearing, did not have the proper translation equipment;

e. Defendants did not provide Plaintiffs with an accurate English-language Service Plan until **eleven months after MOB's removal**;

f. Defendants required that Plaintiffs take courses with a provider that **did not employ English-speaking staff or an interpreter** which meant that services to Plaintiffs were based on the availability of a student intern;

g. Defendants placed MOB in foster homes where Spanish was the primary language and **did not make any efforts to ensure that MOB was receiving education or care in the English language.**

Id. at 51-52.

4.    The Court further found that the preliminary injunction factors of irreparable harm, balance of hardships and public interest also favored an injunction. Id. at 46-50.

5.    As a result, Defendants were ordered to:

a. Immediately assign a fully bilingual social worker to MOB's case. "Fully bilingual" means that the person has a degree of proficiency in English and Spanish that

> enables faithful and accurate communication in both languages without relying on translation aids.
>
> b. Ensure that third-party contractors or entities which are to render services to Plaintiffs and MOB under the State-Court approved Service Plan can deliver the services in English or are assisted by an interpreter retained by the PRDF to ensure services are not delayed.
>
> c. Generate in English all documents to be delivered by the PRDF or its contractors to Plaintiffs as part of their ongoing intervention with this family.
>
> d. Within twenty-one (21) days of entry of this ORDER, place MOB in a foster home with an English-speaking family or with a qualified family member, if no such foster homes are available.
>
> Id. at 1-2; 52.

6.   The Court denied Plaintiffs' request for the return of MOB's physical custody. Id. at 26, 48.

November 3, 2021 Hearing on Defendants' Noncompliance of Court's Preliminary Injunction Order

7.   The PRDF conceded during the hearing that a bilingual social worker was unavailable in the Aguada office, thus Plaintiffs' social worker, Mr. Lorenzo, was assisted by English-speaking social workers from the Adult program. (Docket No. 132 at 7).

8.   The PRDF argued that these social workers were unable to fully take over MOB's case because they did not "have the specific training to deal with kids." Id.

9.   It testified that a Ponce-based bilingual social worker, Jackeline Rodríguez Mandry, was assigned to MOB's case on October 19. (Docket Nos. 125 at 3; 132 at 8).

10.  It also testified that Mrs. Osuji had completed her therapy treatments in English, while Mr. Bey's were still pending completion. (Docket No. 132 at 9, 11-12).

11.  Mrs. Osuji testified she had been notified the week before the hearing of the PRDF's intent to move MOB to a foster home in San Juan. Id. at 5.

12.  The PRDF explained that it approached an English-speaking foster family in Aguada to see if they could foster MOB, but it was unavailable. Id. at 9.

13.  The PRDF did not state when they attempted to reach out to said foster family. Id.

14.  The next available bilingual foster home was in San Juan with a single parent and two other foster children. Id.

15.  The PRDF did not state when they reached out to the foster family in San Juan. Id.

16.  Because the proffered foster parent in San Juan works throughout the day, MOB would be placed in a Montessori Day Care. Id.

17.  The PRDF did not explain whether the day care had staff or other children under its care who spoke English. Id.

18. The PRDF asserted that MOB's move to the San Juan foster home was scheduled for Friday, November 5. Id. at 10.

19. Plaintiffs admitted into evidence a September 30, 2021 order by the Judge presiding over the state court case, the Hon. Judge Eric M. Ruiz-Pérez, in which he ordered the PRDF to comply with this Court's September 27 Preliminary Injunction Order. Id. at 17, 21.

20. More specifically, Judge Ruiz-Pérez ordered that:

> THE DEPARTMENT OF THE FAMILY IS ORDERED TO COMPLY WITH THE ORDER OF THE FEDERAL COURT IN THE CASE OF OSUJI VS. DEPARTMENT OF FAMILY, ET AL., CIVIL CASE 20-1545 (RAM); COORDINATE THE PENDING THERAPIES SO THAT DEFENDANTS CAN CONCLUDE THE SERVICE PLAN IMMEDIATELY, ALLOWING DEFENDANTS TO VISIT THEIR CHILD AS FREQUENTLY AS POSSIBLE. THE DEPARTMENT OF THE FAMILY IS ORDERED UNDER AN ECONOMIC PENALTY OF ONE THOUSAND DOLLARS ($1,000.00) TO RENDER WITHOUT ANY EXCUSE, ALL OF THE MISSING SERVICES TO DEFENDANTS IN THE ENGLISH LANGUAGE SO THAT IF DEFENDANTS COMPLY THEREWITH AT THE HEARING OF DECEMBER 6, 2021 AT THREE IN THE AFTERNOON CUSTODY OF THE MINOR CAN BRE [sic] GIVEN TO DEFENDANTS. BE ADVISED THAT IF THERE IS ANY FAILURE IN COMPLIANCE WITH THE SERVICE PLAN AND THE SAME IS ATTRIBUTABLE TO THE DEPARTMENT OF THE FAMILY, THE COURT WILL PROCEED AT SAID HEARING TO COMPLY WITH THE SERVICE PLAN AND TO GRANT CUSTODY OF THE MINOR TO DEFENDANTS.

(Docket No. 121-1).

21. The Court granted the TRO, thus ordering that MOB remain in Aguada for the time being. (Docket No. 132 at 19.

November 12, 2021 Evidentiary Hearing

22.   The PRDF's *Motion in Compliance with Order and to Show Cause* filed prior to the November 12 hearing stated that since October 12, the PRDF Aguadilla Local office had reached out to three group homes in San Sebastián to see if they were viable alternatives to receive MOB, but none were possible options. (Docket No. 125 at 3).

23.   The Court notes that although the PRDF stated that three group homes were contacted, the November 4, 2021 "Carta Informativa Relacionada a Las Alternativas De Ubicacion En Un Hogar Bilingüe En Beneficiol Del Menor M.O.B." (or "Informative Letter Related to The Alternatives For Placement In A Bilingual Home For The Benefit Of M.O.B." in English) only shows that the PRDF contacted <u>two</u> homes in San Sebastián. (Docket No. 142-2 at 22).[3]

24.   On October 12, the PRDF communicated with a bilingual home in San Sebastián to see if they had space for MOB, but it was not a viable option. (Docket No. 142 at 22).

25.   On October 25, the PRDF communicated with the same home in San Sebastián, but it was still not a viable option. <u>Id.</u>

---

[3] The Court takes judicial notice of this letter which was admitted into evidence in the contempt hearing as part of Plaintiffs' Exhibit 2 (documents from the ongoing state court case). *See* <u>AES Puerto Rico, L.P. v. Trujillo-Panisse</u>, 133 F. Supp. 3d 409, 415 (D.P.R. 2015) (holding that "documents on file in federal or state courts are proper subjects of judicial notice.")

26. On October 26, the PRDF communicated with a third home in San Sebastián, but it had no availability. Id.

27. The parties and the Court agreed that it was in Plaintiffs and MOB's best interest to remain with the same case worker, Mr. Lorenzo, until the next state court hearing on December 6. (Docket No. 131 at 3-4; 12-13).

28. The Court reiterated that "whatever the [PRDF] generates concerning this family should be generated in English and delivered to them in English." Id. at 11, 13.

29. The Court requested that the PRDF continue to search for a family within the Aguadilla Judicial Region. Id. at 10.

30. The Court takes judicial notice that this region encompasses the municipalities of: Aguada, Aguadilla, Isabela, Moca, Rincón and San Sebastián.[4]

31. The Court also takes judicial notice of 2020 Census data which states that the combined population of those five municipalities is 228,172 persons.[5]

32. The Court postponed the show cause hearing related to the contempt issue until December 14. Id.

December 14, 2021 Contempt Hearing

---

[4] See Directorio del Poder Judicial, Poder Judicial de Puerto Rico. https://www.poderjudicial.pr/index.php/directorio-del-poder-judicial/ (last visited December 21, 2021).

[5] See Puerto Rico: 2020 Census, United States Census Bureau, https://www.census.gov/library/stories/state-by-state/puerto-rico-population-change-between-census-decade.html (last visited December 21, 2021).

33.  In an urgent motion filed a day before the contempt
     hearing, the PRDF requested a continuance because its main
     witness, Mr. Lorenzo, would be unable to testify until
     December 23 due to health issues. (Docket No. 138 at 2-4).

34.  The Court denied the PRDF's request. (Docket No. 139).

35.  At the contempt hearing, the PRDF stated it was in a state
     of "defenselessness" due to Mr. Lorenzo's unavailability.
     (Docket No. 140).

36.  The PRDF also averred that the other witness who knew the
     most about the case was "out of the country."

37.  Mrs. Osuji testified that Mr. Lorenzo's supervisor, Mrs.
     Jacqueline Quiñones ("Mrs. Quiñones") was at Defendants'
     counsel's table during the contempt hearing.

38.  The PRDF did not call Mrs. Quiñones as a witness.

39.  Based on the documents on the record, Mrs. Quiñones could
     have at least testified at the contempt hearing about the
     PRDF's attempts to place MOB in a bilingual home.

40.  Mrs. Osuji also testified that the following people were
     present at the virtual December 6 state court hearing: her
     state court attorney, the PRDF's attorney, MOB's Guardian
     Ad Litem, Mrs. Quiñones, and Mr. Emanuelli's supervisor.

41.  Mrs. Osuji asserted that MOB is currently living with the
     same foster family he was living with prior to the

injunction hearing. This family allegedly does not speak English.

42. She testified that the PRDF did not reach out to any of her family members.

43. She also stated that the documents she had received from the PRDF were the visitation plan and the translation for the SEPY services contract, *i.e.* the company which handles the therapy services she and her husband are required to take per the PRDF's service plan.

44. She acknowledged she received some state court documents, but in Spanish.

45. Mrs. Osuji stated she had 12 sessions with a psychologist at SEPY, Mr. Victor Emanuelli ("Mr. Emanuelli"), who was fluent in English.

46. She explained that Mr. Emanuelli was not a licensed therapist, thus his supervisor needed to review progress reports he made regarding Mrs. Osuji.

47. Her state court attorney purportedly received a copy of the final Report, dated November 23, 2021, a few days before the December 6 state court hearing and then he discussed parts of the report with her before the hearing.

48. During the December 14 hearing, the PRDF conceded that parts of the Report were in Spanish.

49.  Mrs. Osuji testified that the December 6 hearing was
     continued to January 25 in part because the translator
     refused to continue translating during the hearing.
     Defendants did not refute this.

50.  Plaintiffs admitted into evidence a text message chat from
     the translator assigned to Mrs. Osuji for that hearing
     telling Mrs. Osuji that she was unable to continue
     translating for her that day. (Docket No. 142-3).

51.  The Court issued a verbal order modifying its injunction
     to include that MOB shall not be removed from the Aguadilla
     Judicial Region. (Docket No. 141).

52.  The state court case was originally filed in the Court of
     First Instance, San Juan Part but the case was transferred
     to the Court of First Instance, Aguadilla part when MOB
     was moved to a home within the Aguadilla Judicial Region.

### III. ANALYSIS

#### A. Civil Contempt

Federal Court orders are not suggestions. *See* Almeida-León v.
WM Cap. Mgmt., Inc., 2021 WL 3575037, at *14 (D.P.R. 2021) (finding
that "[c]ompliance with an order from a federal judge is not
optional."). Thus, a federal court may impose civil contempt
sanctions "to coerce compliance with a court order or to compensate
a party harmed by non-compliance." Id. (quoting United States v.
Puerto Rico, 642 F.3d 103, 108 (1st Cir. 2011). To show civil

contempt, a moving party must surpass a four-prong test. *See* <u>Pina</u> <u>v. Feliciano-Rivera</u>, 2017 WL 2889661, at *2 (D.P.R. 2017), <u>report</u> <u>and recommendation adopted</u>, 2017 WL 2910997 (D.P.R. 2017). To wit, they must show that: "(1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." <u>William Rivera-Molina et</u> <u>al. v. Casa La Roca, LLC et al.</u>, 2021 WL 5679390, at *2 (D.P.R. 2021) (quoting <u>Rodríguez-Miranda v. Benin</u>, 829 F.3d 29, 46 (1st Cir. 2016)). The movant must also prove this through clear and convincing evidence. <u>Id.</u> Lastly, civil contempt is regarded as a "forward-looking penalty" that may be eliminated by future compliance with a court order. <u>Pina</u>, 2017 WL 2889661, at *2 (quotation omitted).

> 1. <u>Defendants had notice of the September 27 Preliminary</u>
>    <u>Injunction Order and it was clear and unambiguous</u>

The Court's unambiguous language in the September 27, 2021 Opinion and Preliminary Injunction Order placed Defendants on notice that they had to comply with the Court's 4-item list ordering them to: (1) assign a fully bilingual social worker to MOB's case; (2) ensure that all contractors which render services to Plaintiffs and MOB can deliver the services in English; (3) generate all documents provided to Plaintiffs in English; and (4) place MOB in an English-speaking foster home *or* with a qualified

family member. (Docket No. 111 at 1-2, 52). Notably, **neither party has averred the opposite is true**. Moreover, there can be no doubt that the Court's Order applied to Defendants given that it specifically ordered them to act. Thus, Plaintiffs have easily surpassed the first two factors of the civil contempt test. The remaining questions are whether Defendants were able to comply with the order and whether they violated the same. *See* William Rivera-Molina et al., 2021 WL 5679390, at *2.

### 2. Defendants failed to show they could not comply with the September 27 Preliminary Injunction Order

As explained above, the third prong of the contempt inquiry focuses on whether compliance with the court's order was possible. *See* William Rivera-Molina et al., 2021 WL 5679390, at *2. If complying with the order proves impossible, then "neither the moving party nor the court has any reason to proceed with the civil contempt action." Almeida-León, 2021 WL 3575037, at *16 (quoting United States v. Rylander, 460 U.S. 752, 757 (1983)). However, the supposed contemnor **bears the burden of production to show their inability to comply** with the terms of the order at issue. *See* United States v. Puerto Rico, 642 F.3d 103, 108 n.8 (1st Cir. 2011) (quotation omitted). More importantly, they "must overcome a presumption of ability to comply with a court order." Hicks v. Feiock, 479 U.S. 1305, 1306 (1986) (citation omitted).

Here, in response to the Court's Order to Show Cause, the PRDF's motion in compliance represented that the PRDF Aguadilla office did not have a fully bilingual case worker on staff. (Docket No. 125 at 2-3). Therefore, to try and comply with the Court's orders, the PRDF identified and assigned a bilingual social worker based in Ponce to MOB's case. <u>Id.</u> at 3. **However, the PRDF acknowledges that they did not officially assign the case to a bilingual Ponce-based social worker, Mrs. Jackeline Rodríguez Mandry, until October 19, that is <u>22 days</u> after the issuance of the September 27** Preliminary Injunction Order. <u>Id.</u> Similarly, the case discussion was allegedly completed on November 1. <u>Id.</u> The PRDF further asserted they complied with providing all PRDF documents and communications with Plaintiffs in English and that Mrs. Osuji was able to complete her psychological evaluations in English. <u>Id.</u> at 4. Lastly, it contends that the Aguadilla PRDF office inquired with three group homes in San Sebastián, but they could not house MOB. <u>Id.</u> at 3. Thus, they aver to have complied with the Court's Preliminary Injunction Order. <u>Id.</u> But none of these assertions pass muster.

   i.  *Defendants failed to assign a bilingual social worker to MOB's case*

The Court finds that the PRDF failed to assign Plaintiffs a bilingual social worker as ordered by the Court's Preliminary Injunction Order. (Fact ¶ 5). But, given that the PRDF was ordered

at the contempt hearing to find a home within the Aguadilla
Judicial Region, and that Court had previously stated that "the
interest of MOB is best served by leaving the supervision of the
case in the Aguadilla Regional Office," the Court will not find
the PRDF in contempt as to this aspect of the Preliminary
Injunction Order for now. (Fact ¶ 52; Docket No. 131 at 4).

> ii. *Defendants failed to show why they could not place MOB
>      in a foster home with an English-speaking family within
>      the 21-day timeframe*

The Court finds that the PRDF failed to show why it could not
place MOB with an English-speaking foster home within the Court's
deadline. Per the Court's Preliminary Injunction Order, Defendants
had twenty-one (21) days to place MOB in a foster home with an
English-speaking family or with a qualified family member. (Fact
¶ 5). Thus, given that the Court's Preliminary Injunction Order
was issued on September 27, Defendants had until **October 18, 2021**
to place MOB in a English-speaking foster home. While the PRDF
contends it attempted to reach out to several group homes in San
Sebastián to see if they could take in MOB, **they have nonetheless
failed to proffer *any* justification as to why the first attempt to
contact any of these homes did not occur until October 12, barely
a week before Court-ordered timeframe was set to expire.** (Facts ¶¶
23-26). *See e.g.*, Almeida-León, 2021 WL 3575037, at *16 (finding
that plaintiffs were in contempt of final judgment in part because
they could have complied with the judgment given that they had not

"demonstrated why it is impossible for them to sign a joint motion with WM Capital and proceed with the foreclosure.")  Moreover, at the contempt hearing held on November 3, the PRDF posited its staff also attempted to reach out to a bilingual foster home in Aguada, but to no avail. However, the PRDF did not provide any details for when such an attempt was made. (Facts ¶ 12-13).

The PRDF also attempted to comply with the Court's Preliminary Injunction Order by assigning MOB to a bilingual foster home in San Juan. (Fact ¶ 14). As with the bilingual house in Aguada, the PRDF did not state when they first reached out to this foster home. (Fact ¶ 15). The move from the home where MOB is currently living to the San Juan-based home was expected to occur on November 5, but the Court issued a TRO requiring that MOB remain where he is for the time being. (Facts ¶¶ 18, 21). **The Court takes a dim view of the PRDF's last minute attempt to place MOB in a foster home in San Juan when his mother, who is committed to regaining custody, lives in Aguada and the transfer of MOB to San Juan would likely trigger a transfer of the case from the Court of First Instance, Aguadilla part to the Court of First Instance, San Juan Part.** (Fact ¶ 52). Moreover, it would not be farfetched for this Court to assume that this would cause even more delays in the state-court removal case.

> *iii. Defendants failed to generate all documents to be delivered to Plaintiffs by themselves or its contractors in English*

The PRDF has also failed to proffer all the documents it or
its third-party contractors generate in MOB's case in English as
ordered by this Court in the Preliminary Injunction Order. (Fact
¶ 5). Nowhere is this clearer than the Report, which is meant to
provide a status report to the state court on Plaintiffs'
compliance or lack thereof with the PRDF's service plan and the
PRDF's reunification requirements. (Docket No. 142-2). Mrs. Osuji
testified that her state court attorney received a final version
of the report only a few days before the December 6 hearing and
discussed the report with her. (Fact ¶ 47). Nevertheless, the PRDF
conceded during the Contempt hearing that at least parts of the
Report were in Spanish. (Fact ¶ 48). Yet, it did not explain why
it did not generate an English-language copy of the Report for
Mrs. Osuji. Therefore, the PRDF failed to comply with this Court's
September 27 Order to "[g]enerate in English all documents to be
delivered by the PRDF or its contractors to Plaintiffs as part of
their ongoing intervention with this family." (Fact ¶ 5). It also
contravenes the Court's verbal Order during the November 12 hearing
that "whatever the [PRDF] generates concerning this family should
be generated in English and delivered to them in English." (Fact
¶ 28). *See e.g.*, <u>Pina</u>, 2017 WL 2889661, at *2 (quotation omitted)
(finding defendant in contempt because he had not shown "that he
was unable to stop performing outside of the [settlement

agreement]" and since he had "not provided any evidence to show that compliance with the injunction is factually impossible . . . the court must presume [he] was able to comply with the injunction.")

 

    *iv.  Other issues*

    The Court cannot cast a blind eye on the fact that translations issues have tormented Plaintiffs since the beginning of the state court case and that translation issues were one of the *main* reasons why the Court granted the preliminary injunction in Plaintiffs' favor in the first place. (Docket No. 111 at 32-37). Moreover, they were the principal reason for the cancellation of the state court hearing on December 6. (Facts ¶¶ 49-50). Defendants did not refute this. (Fact ¶ 49). With this incident, the translation issues are unfortunately still very much the norm. Thus, **any future failure by Defendants to provide adequate translation in any hearing before the Court of First Instance related to the ongoing state proceedings will result in a sanction of five hundred dollars ($ 500.00) per hearing.**[6] The September 27 Preliminary Injunction is hereby **MODIFIED** to order that Defendants provide adequate translators at any hearing before the Court of First Instance.

---

[6]  *See Federal Court Interpreters*, United States Courts, https://www.uscourts.gov/services-forms/federal-court-interpreters (last visited December 21, 2021).

### B. Judicial Sanctions

A court may impose judicial sanctions in a civil contempt proceeding for either or both of two principal purposes: "[1] to coerce the defendant into compliance with the court's order, and [2] to compensate the complainant for losses sustained." Pina, 2017 WL 2889661, at *4 (quoting United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947)). When the court's objective in imposing the judicial sanction is to make the defendant comply, as opposed to a compensatory remedy, "the court's discretion [as to the amount imposed] is otherwise exercised." G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 41 (1st Cir. 1980) (quotation omitted). Consequently, the court must account for "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the desired result." Pina, 2017 WL 2889661, at *5 (quoting United Mine Workers, 330 U.S. at 304). **Mathematical proximity is not required, as long as the sanction is proportionate to the sanctioned conduct**. Id.

Here, even though almost three months have elapsed since the Court issued its Preliminary Injunction Order, the Court finds that due to Defendants' continued violations to the orders set forth therein, Plaintiffs appear no closer to regaining custody of their son and to be able to communicate with him properly once they do so. **The Court hereby modifies the September 27, 2021**

**Preliminary Injunction Order to require that the English-speaking foster home must be located within the Aguadilla Judicial Region.** As a matter of discretion, Defendants are granted until December 31, 2021 to place MOB with an English-speaking family in the Aguadilla Judicial Region. (Docket No. 141). **If they fail to comply, they will be sanctioned one thousand five hundred ($1,500) dollars per diem**. Id. This amount will be deposited in the Clerk's Registry as a security should an eventual judgment be entered in Plaintiffs' favor. Id. The Court notes that this fine is intended to deter any future noncompliance by Defendants and to have them come into compliance with the preliminary injunction order.

As a final note, Plaintiffs admitted into evidence during a November 3 noncompliance hearing a September 30, 2021 order from the Hon. Judge Eric Ruiz Pérez, the state court judge based in the Court of First Instance, Aguadilla Part presiding over the removal case, ordering the PRDF to comply with this Court's Preliminary Injunction Order with noncompliance subject to a $1,000.00 per day penalty. (Facts ¶¶ 19-20). The fact that the PRDF was under this explicit order from the state court judge, and it still failed to comply with this Court's Preliminary Injunction Order, implies that it is not outside the realm of possibility that some gamesmanship by the PRDF and Defendants might have been afoot in proposing a foster home in San Juan, which would likely trigger a

change of the case to the Court of First Instance, San Juan
Superior Court.

## IV.  CONCLUSION

Here, Defendants, as civil contemnors, "carry 'the keys of
their prison in their own pockets[.]'" Shillitani v. United States,
384 U.S. 364, 369 (1966) (quoting In Re Nevvitt, 117 F.448, 461
(C.A. 8th Cir. 1902). In not complying with this Court's
Preliminary Injunction Order at Docket No. 111, Defendants have
evidently failed to respect Plaintiffs' "**[c]hoices about marriage,
family life, and the upbringing of [their] children," rights which
the Supreme Court of the United States "has ranked as 'of basic
importance in our society[.]'"** M.L.B. v. S.L.J., 519 U.S. 102, 116
(1996) (quoting Boddie v. Connecticut, 401 U.S. 371, 376 (1971))
(emphasis added). Defendants must therefore be found in contempt.
Plaintiffs' *Emergency Motion Informing Noncompliance with
Preliminary Injunction Order and Requesting a Temporary
Restraining Order or Equivalent Relief* is hereby **GRANTED**.

As AMENDED and RESTATED, Defendants the PRDF, Mrs. González-
Magaz and Mrs. Gerena-Ríos are hereby subject to the following
Preliminary Injunction Order and are **ORDERED** to:

- Ensure that third-party contractors or entities which
  are to render services to Plaintiffs and MOB under the
  State-Court approved Service Plan can deliver the
  services in English or are assisted by an interpreter
  retained by the PRDF to ensure services are not delayed.

- Generate in English all documents to be delivered by the PRDF or its contractors to Plaintiffs as part of their ongoing intervention with this family.

- Ensure that Plaintiffs are provided with adequate Spanish to English translation services at <u>all</u> state court hearings related to the ongoing state court proceedings.

- Place MOB with an English-speaking family within the Aguadilla Judicial Region by **December 31, 2021**.

If Defendants fail to place MOB in an English-speaking family by **December 31, 2021**, they will be sanctioned **one thousand five hundred ($1,500) dollars per day**. Likewise, if they fail to provide adequate translation services at any hearing related to the ongoing state court proceedings, they will be sanctioned five hundred dollars **($ 500.00) per hearing.**

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 21st day of December 2021.

S/ RAÚL M. ARIAS-MARXUACH_____
United States District Judge